Jacqueline R. WALKER and Kevin R. Franklyn, Plaintiff,

v.

MICHAEL W. COLTON TRUST, Michael W. Colton, P.C., Michael W. Colton, Melvin Rosen, and Edy's Carpet Heating & Cooling, Defendants.

No. CIV. 98–40315.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 13, 1999.

Jacqueline R. Walker, Detroit, MI, pro se, Carl L. Collins, III, Detroit, MI, for Kevin R. Franklyn, plaintiff.

Michael W. Colton, Farmington Hills, MI, pro se, Melvin Rosen, Southfield, MI, pro se.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART COLTON DEFENDANTS' MOTION TO DISMISS COMPLAINT

GADOLA, District Judge.

On October 14, 1998, defendants Michael W. Colton Trust, Michael W. Colton, P.C., and Michael W. Colton (hereinafter "Colton defendants" or "moving defendants") filed a motion to dismiss plaintiffs' complaint. Previously, on September 14, 1998, this Court granted plaintiffs' motion for preliminary injunction, enjoining the foreclosure or sheriff's sale of the residential property known as 15435 Ashton, Detroit, Michigan 48223.[1] The preliminary injunction was issued following a hearing conducted on the same day, September 14, 1998. On October 22, 1998, plaintiff Kevin R. Franklyn filed an affidavit wherein he objects to the instant motion to dismiss. In addition, on November 4, 1998, plaintiff Franklyn filed a response to defendants' motion. On November 18, 1998, plaintiff Franklyn filed a brief in support of his response to defendants' motion. On December 3, 1998, defendants filed a reply brief in support of their motion to dismiss.

Plaintiffs' complaint contains seven counts, which may be summarized as follows:

Count I: alleges that defendants violated the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*,

Count II: requests that this Court exercise its equitable powers to rescind and cancel the June 7, 1997 credit transaction and the allegedly fraudulent mortgage document pursuant to 15 U.S.C. § 1635 *et seq.*

Count III: alleges that defendants violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.

Count IV: alleges that defendants violated plaintiffs' civil rights and property rights pursuant to 42 U.S.C. § 1982

Count V: alleges that defendants conspired to violate plaintiffs' civil rights and property rights pursuant to 42 U.S.C. § 1985

---

1. The residential property located at 15435 Ashton is allegedly owned by plaintiff Kevin R. Franklyn. As the Court remarked at the September 14, 1998 preliminary injunction hearing, plaintiff Jacqueline R. Walker does not appear to have a property interest in the residence at issue. Therefore, as the Court previously remarked, Jacqueline R. Walker appears to lack standing to be a plaintiff in the instant law suit. *See* Section III.A. *infra.*

Count VI:    alleges a *state law* claim of fraud, deceit and misrepresentation

Count VII:   alleges a *state law* claim of intentional infliction of emotional distress.

---

Since this Court's jurisdiction in the instant case is based upon a federal question, pursuant to 28 U.S.C. § 1331, the Court, in its discretion, may decline to hear plaintiffs' state law claims. As a consequence, this Court will dismiss Count VI (fraud) and Count VII (intentional infliction of emotional distress), as well as the various state law claims interspersed throughout the remaining counts, through exercise of its discretionary pendent jurisdiction. *See* Section III.H. *infra.* The analysis which follows will thus focus upon plaintiffs' *federal* law claims in Counts I though V, as well as defendants' responses to those claims.

The Court will dismiss all counts, with the exeception of Count I and Count II. With respect to plaintiff's claim under the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*, contained in Count I, plaintiff Franklyn will be directed to submit, within 10 days, a more definite statement of his RESPA claim pursuant to Federal Rule of Civil Procedure 12(e). Furthermore, defendants will be allowed to file a renewed motion to dismiss with respect to Counts I and II within 10 days following plaintiff's submission of a more definite statement of his RESPA claim. Oral argument previously scheduled for hearing on January 13, 1999 will be adjourned until further notice.

## I. FACTUAL BACKGROUND

According to defendants, plaintiff Kevin R. Franklyn initiated contact with Mr. Rosen, the manager of Edy's Carpet, Heating & Cooling (hereinafter "Edy's") on June 5, 1997. Mr. Franklyn allegedly telephoned Rosen and asked about buying carpet for his home located at 15435 Ashton, Detroit, Michigan. Thereafter, Rosen purportedly went to the property to discuss the transaction with Franklyn. Franklyn then allegedly decided to purchase premium carpeting for his approximately 4,000 square foot home. Defendants maintain that Franklyn was unable to

pay for the installation of the carpeting immediately, and therefore requested available financing.

After requesting financing, Rosen allegedly quoted a price of $12,000 for the carpeting and installation, with $2,000 as a down payment, resulting in $10,000 to be financed. According to defendants, Rosen provided Franklyn with the following documents, allegedly explaining each one to plaintiff:

(1) a Mortgage Financing Application (Exh. A to Motion to Dismiss);

(2) a Home Improvement Installment Contract (Exh. B to Motion to Dismiss);

(3) a written Notice of Right to Cancel (Exh. C to Motion to Dismiss); and

(4) a Mortgage (Second) as security, providing an installment payment plan (Exh. D to Motion to Dismiss).

According to defendants, Franklyn acknowledged receipt of these documents and executed each document where required, and in front of witnesses and a notary public. Franklyn never canceled the Home Improvement Installment Contract. On July 2, 1997, plaintiff Jacqueline Walker signed a Certificate of Completion, on Franklyn's behalf, acknowledging satisfactory completion of the installation of the carpet. *See* Exh. E to Motion to Dismiss. Defendant maintains that Walker was not the buyer in the above-described transaction, nor does she have any legal ownership in the property in question.

Defendant further alleges that Franklyn understood that he was offering a second mortgage for his purchase of the carpeting and installation because, in order to obtain the financing, Franklyn provided Rosen with the following documents:

(1) a Bill of Sale with respect to his purchase of the Ashton property (Exh. F to Motion to Dismiss);

(2) a confirming letter from attorneys to Ms. Walker verifying settlement monies

given to her to prove her ability to pay (Exh. G to Motion to Dismiss);

(3) a Homestead Exemption Certificate (Exh. H to Motion to Dismiss);

(4) a Property Transfer Affidavit (Exh. I to Motion to Dismiss);

(5) a gift letter evidencing Ms. Walker's gift to Franklyn of money for the purchase of his home (Exh. J to Motion to Dismiss); and

(6) excerpts from Franklyn's 1996 federal income tax return (Exh. K to Motion to Dismiss);

Ten days after completion of the above-described transaction, on June 17, 1997, Rosen allegedly contacted defendant Michael W. Colton Trust and offered to sell the Franklyn debt along with the mortgage. Defendant Colton, as trustee, then purchased the Home Improvement Installment Contract and the mortgage for valuable consideration. The debt was not in default at that time.

On June 18, 1997, Colton allegedly sent a letter to Franklyn, introducing the Colton Trust as the assignee of the debt. *See* Exh. L to Motion to Dismiss. According to defendants, having received no payments from Franklyn, Colton Trust sent letters of default to Franklyn on October 9, 1997. *See* Exhs. M and N to Motion to Dismiss. By April 15, 1998, no payments having been made to Colton Trust, a non-judicial foreclosure action was initiated and the foreclosure sale scheduled for May 22, 1998.

According to defendants, on May 15 and 19, 1998, Mr. Colton was allegedly contacted by telephone by Mr. Lee Scott of Ideal Mortgage. Mr. Lee represented himself as an authorized contact person for Franklyn, and offered a partial payment in exchange for a one week adjournment of the May 22, 1998 foreclosure. According to defendant, on May 20, 1998, Scott guaranteed payment of $250.00 to Colton Trust if Franklyn also paid $250.00 in consideration for Colton Trust's agreement to subordinate its lien on the Ashton Property to Ideal Mortgage's lien. On May 20, 1998, those payments were made, and the May 22, 1998 foreclosure was adjourned for one week. On May 28, 1998,

Franklyn allegedly called Colton and requested that the foreclosure be adjourned for an additional week. Colton, acting on behalf of Colton Trust, agreed and adjourned the foreclosure until June 5, 1998.

On June 3, 1998, Colton, acting on behalf of Colton Trust, purportedly signed an agreement subordinating Colton Trust's rights to those of Ideal Mortgage. Thereafter, Colton allegedly received a check from Ideal Mortgage in the amount of $4,500. Colton then paid $1,400 of that sum to Edy's Carpet, Heating & Cooling because Edy's had a lien on the Ashton property due to the fact that Franklyn allegedly only paid $600 out of the $2,000 down payment. *See* Exh. O to Motion to Dismiss. Despite the foregoing, defendants contend that it was specifically agreed that payments would continue on the debt as a condition for Colton Trust's agreement to subordinate its lien to Ideal Mortgage. *See* Exh. p to Motion to Dismiss. Defendants further maintain that by July 2, 1998, Franklyn had again defaulted and further notice of default was sent to him. *See* Exh. Q to Motion to Dismiss. Subsequently, defendants initiated another foreclosure action. Thereafter, plaintiff filed the instant law suit.

Defendant Colton allegedly telephoned the Ashton property as more than five times during the time period in question. According to defendants, on one or two of those occasions, Ms. Walker answered the telephone and allegedly informed Colton that she knew about the mortgage and debt, and that she would be making payment in the near future on Franklyn's behalf. According to defendants, all calls were brief and amicable. Defendant lastly maintains that all encumbrances against the Ashton property, including all mortgages or foreclosure actions held or initiated by any of the moving defendants have since been discharged, canceled or otherwise dismissed. *See* Exhs. R and S to Motion to Dismiss.

In response to the above, plaintiff Franklyn has submitted his affidavit in which he presents his version of the facts. In that affidavit, plaintiff Franklyn contends that on June 7, 1997, he did not meet with Colton nor did he sign or execute any legal documents

or agree to a second mortgage for $14,117.40. *See* Franklyn Affidavit ¶ 2. Moreover, plaintiff maintains that on that date, he did not sign or execute a written truth in lending disclosure. *See* Franklyn Affidavit ¶ 3. Plaintiff further states that on June 17, 1997, ten days later, he did not meet with Colton and that the written affidavit of Melvin Rosen is "untrue because I never agreed to any 2nd Mortgage or had any understanding that I would be required to offer a [second mortgage] as 'Security' to obtain carpeting for my residential homestead on 'credit.'" *See* Franklyn Affidavit ¶ 5. Plaintiff maintains that on June 7, 1997, he was "subjected to a fraudulent credit transaction by [defendants]...who induced me into making or fraudulently entering into a Mortgage in violation of Michigan law...." *See* Franklyn Affidavit ¶ 6.

## II. LEGAL STANDARD FOR EVALUATING A MOTION TO DISMISS

Defendants Michael W. Colton Trust, Michael W. Colton, P.C., and Michael W. Colton have moved to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(6) or 56. However, at this early stage in the litigation it would be premature for this Court to consider a motion for summary judgment pursuant to Federal Rules of Civil Procedure 56. Moreover, as discussed above, plaintiffs' state law fraud claim will be dismissed in this court's exercise of discretionary supplemental jurisdiction, and thus the Court need not consider defendant's argument that plaintiff has failed to state with particularity his fraud claim as required under Federal Rule of Civil Procedure 9(b). As a consequence, this Court will construe the instant motion as requesting dismissal based on the following ground: failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) allows defendant to file a motion requesting dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted. When evaluating such a motion to dismiss, the court "must construe the complaint in the light most favorable to the plaintiff,

accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.1993). The Sixth Circuit further held that the complaint "need only give 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quoting *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir.1990)). While this standard is a liberal one, the court also noted that more than a "bare assertion of legal conclusions" is required. *Id.* (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). It is well-settled that a complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Finally, the Sixth Circuit has held that "[a] judge may not grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss based on a disbelief of a complaint's factual allegations." *DeLorean*, 991 F.2d at 1240.

## III. ANALYSIS

### A. Plaintiff Jacqueline R. Walker lacks standing to proceed as a proper party in the instant law suit.

As the Court already noted at the preliminary injunction hearing held on September 14, 1998, Ms. Jacqueline R. Walker does not appear to have any legal ownership interest in the residence of the center of the instant litigation. In fact, the record reflects that Ms. Walker made a monetary gift of $86,000 to Mr. Franklyn to enable him to purchase the Ashton property. *See* Exh. J to Motion to Dismiss (Gift Letter). The Bill of Sale dated June 2, 1997 shows transfer of the property in question to Kevin Franklyn, as sole purchaser. *See* Exh. F to Motion to Dismiss. This Court therefore finds that Ms. Walker *lacks standing* to sue under the federal statutes discussed immediately below. *See* 15 U.S.C. § 1602(h) (defining "consumer" for purposes of the Truth in Lending Act); 15 U.S.C. § 1692a(3) (defining the same term for purposes of the Fair Debt Collection

Practices Act); *see also Warth v. Seldin,* 422 U.S. 490, 514 n. 22, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (holding that to maintain standing under 42 U.S.C. §§ 1981 and 1982, plaintiff must allege injury to "a contractual or other relationship" protected under those statutes).[2]

### B. Count I: Plaintiff Franklyn has stated a claim alleging a violation of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*

Defendant argues that plaintiff's claim under the federal Truth in Lending Act (TILA) is barred by the one-year statute of limitations set forth in 15 U.S.C. § 1640(e). As Section 1640 provides, "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, *within one year* from the date of the occurrence of the violation." 15 U.S.C. § 1640(e) (emphasis added).[3]

Since the credit transaction in question allegedly occurred on June 7, 1997, under Section 1640(e), plaintiff Franklyn would have had to file the instant action on or before June 7, 1998. Plaintiffs, however, filed their complaint on September 4, 1998, *more than* one year after the alleged wrongful conduct of defendants. Consequently, it does appear that plaintiffs' claim for damages under TILA would be barred by the statute of limitations. *See Rust v. Quality Car Corral,* 614 F.2d 1118, 1119 (6th Cir.1980) (holding that if complaint is not filed within time period prescribed by TILA statute of limitations, federal court has no jurisdiction to entertain it, and Federal Rules of Civil Procedure do not alter this fundamental premise); *see also Rudisell v. Fifth Third Bank,* 622 F.2d 243, 248 (6th Cir.1980); *Wachtel v. West,* 476 F.2d 1062, 1065–66 (6th Cir.), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973).

*Nevertheless,* the Sixth Circuit noted in *Rudisell* that "TILA provides a right to rescind a transaction involving a security interest on the residence of the debtor until midnight of the third business day following the consummation of the transaction *or* the delivery of the disclosures required regarding the right to rescind and all other material disclosures, whichever is later." *Rudisell,* 622 F.2d at 247 (citing 15 U.S.C. § 1635). Furthermore, "[i]f the disclosures are never made, the debtor has a *continuing right* to rescind." *Id.* The court further commented that the right to rescind was *not* dependent on the TILA one year statute of limitations. *Id.* at 248 (citing *Littlefield v. Walt Flanagan & Co.,* 498 F.2d 1133, 1136 (10th Cir.1974)). Moreover, "appellant's may have a right to rescind even though their claim for damages is barred by the statute of limitations in 15 U.S.C. § 1640(e)." *Id.*

As a result of the Sixth Circuit's ruling in *Rudisell,* this Court must examine whether, at the time of the filing of the complaint, more than one year after the alleged transaction, Franklyn may still have had a right

---

**2.** Since Jacqueline R. Walker lacks standing to sue, the Court will employ hereinbelow the singular "plaintiff" to refer to Mr. Franklyn's claims as set forth in the complaint.

**3.** Title 15, Section 1640(e) of the United States Code provides, in full, as follows:

[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639 of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 1607 of this title and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action. The Federal agency may—
(1) intervene in the action;
(2) upon intervening—
(A) remove the action to the appropriate United States district court, if it was not originally brought there; and
(B) be heard on all matters arising in the action; and
(3) file a petition for appeal.

to rescind. Resolution of this issue will depend on whether defendants in fact provided plaintiff with the required disclosures regarding his right to rescind under TILA. *See* 15 U.S.C. § 1635(a). Defendants argue that plaintiffs were provided with the Home Improvement Installment Contract and that Franklyn (allegedly) signed and acknowledged that document. *See* Exh. B to Defendants' Motion to Dismiss. According to defendants, this document is sufficient to satisfy Section 1635's disclosure requirement. Indeed, it does appear that the document satisfies the TILA requirements, by providing that "Buyer may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction." *See* Exh. B to Defendants' Motion to Dismiss. As defendants accurately point out, these disclosures (if made) are sufficient as a matter of law. *Turoff v. May Co.*, 531 F.2d 1357 (6th Cir.1976).

However, at the preliminary injunction hearing Mr. Franklyn indicated that he had *not* signed the Home Improvement Installment Contract, despite the appearance of a signature resembling his own on that document. If the signature is a forgery, then of course Mr. Franklyn could not be said to have been notified of his right to rescind. As Franklyn's affidavit states, "on June 7, 1997[,] I did not sign or execute a written truth in lending disclosure statement regarding any 2nd Mortgage transaction for $14,-117.40 . . . ." *See* Franklyn Affidavit ¶ 3.

Applying the standard set forth above for evaluating motions to dismiss, this Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993). Taking as true plaintiff's assertion that he *never* signed the Home Improvement Installment Contract, it is apparent that plaintiff could indeed potentially prove a set of facts in support of his claims that would entitle him to relief. If he never signed the document at issue, then there is no proof that the TILA disclosure requirements were met.

Under *Rudisell*, plaintiff would therefore have a continuing right to rescind. *See Rudisell*, 622 F.2d at 247.

Accordingly, the Court will deny defendants' motion to dismiss with respect to plaintiff's claim under the federal Truth in Lending Act contained in Count I.

C. **Also in Count I: Plaintiff Franklyn will be instructed to submit a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) with respect to his claim alleging a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, et seq.**

Defendants further argue that plaintiff has failed to state a claim for violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.* RESPA was enacted to institute

> significant reforms in the real estate settlement process . . . to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a). The Act applies to lenders who offer "federally related mortgage loans." *See* 12 U.S.C. § 2605. Defendants argue that the transaction at issue in the instant case is not subject to RESPA because plaintiff allegedly financed the purchase and installation of residential carpeting and not the purchase of the home itself. Defendants further maintain the mortgage was offered as security for that financed agreement.

However, in order to support their position that RESPA is inapplicable to the instant case, defendants have quoted language purportedly contained in the federal regulations associated with the implementation of RESPA. For example, defendants cite 24 C.F.R. § 3500.5. (See attached regulation). Yet Section 3500.5 contains *no language whatsoever* standing for the proposition that execution of an instrument creating a security interest is not considered to be a transfer of legal title

for purposes of RESPA. *See* 24 C.F.R. § 3500.5(b)(1). Furthermore, defendants assert that RESPA specifically provides that a home improvement loan is exempt from being covered by RESPA, citing 12 [sic.] 24 C.F.R. § 3500.5(d)(2). However, even as suming defendants meant to cite 24 C.F.R. § 3500.5(d)(2), *no such provision* exists.

Despite defendants' misunderstanding of the statutory provisions, it is true that there is a one-year statute of limitations with respect to bringing a claim under 12 U.S.C. § 2607 or § 2608. *See* 12 U.S.C. § 2614.[4] With respect to bringing a claim under 12 U.S.C. § 2605, however, there is a three year statute of limitations. Plaintiff's complaint does not adequately specify which provision of RESPA it is invoking. Therefore, the Court cannot, at this time, determine whether the statute of limitations has tolled with respect to plaintiff's RESPA claim.

Accordingly, the Court will not dismiss the RESPA claim, but instead instruct plaintiff Franklyn to submit a more definite statement relating to his RESPA claim pursuant to Federal Rule of Civil Procedure 12(e).[5] If such statement is not submitted or if it fails to resolve the ambiguity, plaintiff's RESPA claim shall be stricken.[6]

### D. Count II: Plaintiff Franklyn has stated a claim for recission pursuant to this Court's equitable powers and pursuant to 15 U.S.C. § 1635 *et seq.*

■ In Count II, plaintiff argues for recission based on this Court's equitable powers and on Section 1635 of Title 15 of the United States Code. That Section provides for a right of rescission as to certain transactions. Specifically, the statute states that "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section...." 15 U.S.C. § 1635(a). Moreover, Section 1635 provides for a "*rebuttable* presumption" of delivery once receipt is acknowledged by the obligor: "Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c). Finally, the Section allows for a 3 year statute of limitations: "An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor...." 15 U.S.C. § 1635(f).

Defendants utterly fail to address plaintiffs' claim under 15 U.S.C. § 1635(a). Instead, defendants concentrate on the various state statutory law claims contained in Count II of the complaint. *See* M.C.L. § 493.51 *et*

---

4. 12 U.S.C. § 2614 provides in full as follows:
[a]ny action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in the United States district court or in any other court of competent jurisdiction, for the district in which the property involved is located, or where the violation is alleged to have occurred, within 3 years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any State may be brought within 3 years from the date of the occurrence of the violation.

5. Federal Rule of Civil Procedure 12(e) provides as follows:
[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

6. It should also be mentioned that in Count I plaintiff has also alleged a violation of the federal Consumer Protection Act, 15 U.S.C. § 1601. Defendants do not address this claim. Therefore, the Court will not dismiss plaintiff's claim under the aforementioned Act.

seq. (Michigan Secondary Mortgage Act); M.C.L. § 445.901 et seq. (Michigan Consumer Protection Act); M.C.L. § 445.851a et seq. (Michigan Retail Installment Sales Act). As discussed above, these claims will be dismissed in the exercise of this court's discretionary pendent jurisdiction. Therefore, the Court will not enter into a discussion of these provisions.

Since defendants have not addressed the federal law claim asserted in Count II, they have failed to show why that claim should be dismissed. Accordingly, the Court will deny defendants' motion to dismiss with respect to Count II.

**E. Count III: Plaintiff Franklyn has failed to state a claim that defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq.**

In Count III, plaintiffs allege a violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq. The legislative purpose behind the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The Act applies to the conduct of "debt collectors" and defines such persons as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

■ The moving defendants argue that they are not "debt collectors" within the meaning of the federal statute and point to language in the statute specifically listing those entities which are excluded from the scope of the definition:

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

15 U.S.C. § 1692a(6)(A) & (B). According to defendants, neither Colton–Trust, Colton, P.C., nor Colton, the individual is a "debt collector" under the FDCPA.

As defendants point out, defendant Colton–Trust purchased the debt from Edy's Carpet, Heating & Cooling and was assigned the debt owed to Edy's by Mr. Franklyn. The debt was not in default at that time. Any "debt collection" activities of the Colton–Trust are thus activities of the creditor itself and not subject to the FDCPA. Similarly, Colton, the individual, acting as trustee, is "an officer or employee" of the creditor as defined by the FDCPA, and is thus also exempt from the Act's provisions. Defendants' position is supported by the case law. See Aubert v. American General Finance, Inc., 137 F.3d 976, 978–79.

Even if subject to the FDCPA, defendants further maintain that their actions have not violated the Act. Defendant argue that the filing and/or threatening to file a non-judicial foreclosure action, authorized under Michigan law, M.C.L. § 600.3201, does not constitute harassing or otherwise prohibited conduct under the FDCPA. Plaintiffs maintain that defendants threatened to resame the foreclosure action against the Ashton property if defendants did not receive the then owing installment payment on the alleged Franklyn debt. Plaintiffs do not explain how this is "harassing" or "abusive," but merely allege that such conduct violates the FDCPA.

The FDCPA prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute further provides illustrative examples of harassing, oppressive, or abusive conduct:

(1) The use or threat of use of violence or other criminal means to harm the physical

person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing·a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 U.S.C. § 1692d(1)-(6). Defendants argue that communication which threatens future action which can lawfully be taken by the creditor, and is actually intended to be taken, will generally not constitute a, violation of the FDCPA. *See Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1178 (11th Cir.1985) (holding that threat to institute legal action would not oppress or harass a reasonable consumer); *see also Wright v. Credit Bureau of Georgia, Inc.,* 555 F.Supp. 1005 (N.D.Ga.1983) (letter containing general threat that debtor's credit rating would be adversely affected if he did not pay held not to violate the FDCPA).

The Court need not enter into a discussion of whether the particular actions allegedly taken by defendants were violative of the FDCPA. The Court agrees with the moving defendants, insofar as it appears clear that they were not "debt collectors," but creditors, under 15 U.S.C. § 1692a. As "an officer or employee of a creditor," defendant Colton, acting as trustee for the professional corporation, was collecting debts on behalf of the creditors. Thus, Colton was not a "debt collector" and his actions would not be reviewable under the provisions of the FDCPA.

Accordingly, the Court will dismiss Count III of plaintiff's complaint because plaintiff has failed to state a claim under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*

### F. Count IV: Plaintiff Franklyn has failed to state a claim that defendants violated his civil rights pursuant to 42 U.S.C. § 1981 and § 1982.

Plaintiff alleges that defendants violated his civil rights pursuant to 42 U.S.C. § 1981 and § 1982. Section 1981 provises that

[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. In addition, Section 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Plaintiff alleges in Paragraph 54 (Count IV) of the complaint that defendants Michael W. Colton and Melvin Rosen "interfer[ed] with my 'property rights' as a Black U.S. citizen under the U.S. statute 42 U.S.C. § 1982." In Paragraph 59 (Count IV) of the complaint plaintiff Franklyn alleges that his constitutional rights under the Fifth, Thirteenth, and Fourteenth Amendments were violated by defendants Rosen and Colton "who willfully disregarded the applicable U.S. and ·Michigan law in their attempt to take my money and deprive me of my real and personal property."

In order to state a claim for violation of civil rights under 42 U.S.C. § 1981 and § 1982, a plaintiff must allege disparate treatment based upon membership in a protected class. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 413, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). In the instant case, and as quoted above, plaintiff Franklyn makes mention in passing of his race. But, plaintiff fails to allege or set forth any facts tending to show that he was discriminated on

the basis of his racial background. Plaintiff's claims are devoid of any mention of discrimination or disparate treatment or any other statement relating to how they allegedly were denied "equal treatment" under the law.

Defendants point out that plaintiff Franklyn admits in Paragraph 22 of the complaint that he failed to make any payments on the debt allegedly owed. Therefore, the Colton defendants initiated foreclosure proceedings on a mortgage to secure a debt upon which they reasonably believed plaintiff had defaulted. The initiation of foreclosure proceedings under such circumstances does not evidence a violation of plaintiff's civil rights. Defendants were perfectly entitled to enforce obligations allegedly owed to them by the legal means of foreclosure.[7] *See* M.C.L. § 600.3201.

Plaintiffs have failed to allege discrimination or disparate treatment as required under both § 1981 and § 1982. As a consequence, the Court will dismiss Count IV in its entirety.

### G. Count V: Plaintiff Franklyn has failed to state a claim that defendants conspired to violate his civil rights pursuant to 42 U.S.C. § 1985.

Plaintiff likewise argues that defendants conspired to violate his civil rights pursuant to 42 U.S.C. § 1985. To state a claim for conspiracy under § 1985, a plaintiff must allege four elements:

(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Plaintiff, in the instant case, has utterly failed to establish any of the aforementioned elements. Specifically, plaintiff has neglected to show the existence of any conspiracy, i.e., an agreement between persons to engage "in conduct which constitutes [a] crime or an attempt or solicitation to commit such crime." BLACK'S LAW DICTIONARY 310 (6th ed.1990). Equally significant is plaintiff's failure to allege the second element stated above, that the conspiracy was motivated by some racial or otherwise class-based discriminatory animus. *See Payton v. City of Detroit,* 211 Mich.App. 375, 396, 536 N.W.2d 233 (1995) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)). In light of these reasons, the Court will dismiss Count V of plaintiff's complaint.

### H. Counts VI–VII: Plaintiff's state law claims for fraud, deceit, misrepresentation (Count VI), and intentional infliction of emotional distress (Count VII) will be dismissed without prejudice.

As previously discussed, plaintiff's complaint contains seven counts. The last two counts allege only state law claims. Count VI alleges a state law claim of fraud, deceit and misrepresentation. Count VII alleges a state law claim of intentional infliction of emotional distress. Because Counts VI and VII allege state law claims, they shall be dismissed without prejudice. In addition, the Court shall dismiss all state law claims contained in Counts I through V.

This court has discretion to exercise its pendent jurisdiction. *See* 28 U.S.C. § 1367(c); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In exercising its discretion, the court must look to "considerations of judicial economy, convenience and fairness to the litigants" and avoid needless decisions of state law. *Id.* at 726, 86 S.Ct. 1130; *see also* Charles A. Wright, Arthur R. Miller &

---

**7.** According to defendants, at the present time, the mortgage at issue in the instant case has been discharged by Colton–Trust, and all foreclosure proceedings have been canceled. Thus, there does not appear to be any present threat of foreclosure on the Ashton property. Mr. Franklyn's alleged debt, however, remains due and owing.

Edward H. Cooper, *Federal Practice & Procedure* § 3567.1 (2d ed.1984).

Recent litigation in the federal courts involving federal law claims together with pendent state law claims has caused procedural and substantive problems. Although the federal and state claims in this action arise out of the same factual situation, litigating these claims together may not serve judicial economy or trial convenience.

Because federal and state law each have a different focus, and because the two bodies of law have evolved at different times and in different legislative and judicial systems, in almost every case with pendent state claims the courts and counsel are unduly preoccupied with substantive and procedural problems in reconciling the two bodies of law and providing a fair and meaningful proceeding.

The attempt to reconcile these two distinct bodies of law often dominates and prolongs a pre-trial practice, complicates the trial, makes the jury instructions longer, confuses the jury, results in inconsistent verdicts, and causes post-trial problems with respect to judgment interest and attorney fees. Thus, it appears that in many cases the apparent judicial economy and convenience of the parties' interest in the entertainment of pendent state claims may be offset by the problems they create.

For the foregoing reasons, this Court shall dismiss Count VI and Count VII of plaintiffs' complaint. This Court shall also dismiss the various state law claims contained in Counts I through V.

Counsel for plaintiff is directed to M.C.L. § 600.5856, regarding the tolling of the state statute of limitations. *See also Lee v. Grand Rapids Bd. of Educ.*, 148 Mich.App. 364, 384 N.W.2d 165 (1986); *Shrader, Inc. v. Ecclestone Co.*, 22 Mich.App. 213, 177 N.W.2d 241 (1970).

### ORDER

Now, therefore, it is hereby **ORDERED** that Colton Defendants' Motion to Dismiss Complaint is granted in part and denied in part;

It is further **ORDERED** that Ms. Jacqueline R. Walker is hereby dismissed as a party plaintiff in the above-entitled case for the reason that she lacks standing to sue;

It is further **ORDERED** that Colton Defendants' Motion to Dismiss is denied without prejudice with respect to Counts I and II;

It is further **ORDERED** that Colton Defendants' Motion to Dismiss is granted with respect to Counts III, IV, and V of plaintiff's complaint;

It is further **ORDERED** that Counts VI and VII are dismissed *sua sponte* and without prejudice;

It is further **ORDERED** that any state law claims contained in Counts I, II, III, IV, and V are also dismissed;

It is further **ORDERED** that with respect to plaintiff's claim pursuant to the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*, contained in Count I, plaintiff Franklyn shall submit **within 10 days** a more definite statement of his RESPA claim pursuant to Federal Rule of Civil Procedure 12(e);

It is further **ORDERED** that defendants may file a *renewed* motion to dismiss with respect to Counts I and II, **within 10 days** following plaintiff's submission of a more definite statement of his RESPA claim pursuant to Federal Rule of Civil Procedure 12(e);

It is further **ORDERED** that oral argument previously scheduled for hearing on January 13, 1999 is adjourned.

**SO ORDERED.**